# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (ALEXANDRIA DIVISION)

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| **8533 GEORGETOWN PIKE LLC** | ) | Case No. 21-11000-BFK |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| **FVCBANK**, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **8533 GEORGETOWN PIKE LLC**, | ) | |
| | ) | |
| Debtor/Respondent. | ) | |

## FVCBANK'S MOTION FOR RELIEF
## FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

### LOCAL RULE 4001(a)-1(C) NOTICE

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one)**

**If you do not wish the Court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then within 14 days from the date of service of this motion, you must file a written response explaining your position with the Court and serve a copy on the movant. Unless a written response is filed and served within this 14-day period, the Court may deem opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing.**

**If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the expiration of the 14-day period.**

**You will be notified separately of the hearing date on the motion.**

FVCbank (the "**Bank**"), by its undersigned counsel, pursuant to 11 U.S.C. § 362, moves for approval of an order terminating the automatic stay as to real property , and in support thereof, states:

## Jurisdiction

1.      The bases for the relief requested in this motion are Section 362 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*., Federal Rule of Bankruptcy Procedure 4001, and Local Bankruptcy Rule 4001(a)-1.

2.      The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334(a). This contested matter is a "core" proceeding as defined in 28 U.S.C. § 157. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.      On February 26, 2018, the Bank extended a $2,000,000 commercial loan (the "**Loan**") to 8533 Georgetown Pike LLC (the "**Debtor**") and AMC Building Group Inc. ("**AMC**" and together with the Debtor, the "**Borrowers**") for the purpose of funding (i) AMC's construction of a single family house on property acquired in the Debtor's name and (ii) the Debtor's sale of the house.  The Loan is evidenced by a Deed of Trust Note executed by Borrowers and payable to the Bank (as amended by those certain Change in Terms Agreements dated August 13, 2019, December 19, 2019 and June 26, 2020, the "**Note**").  The Note is attached hereto and incorporated herein as **Exhibit 1**.

4.       The Loan is secured by, *inter alia*, a duly perfected first priority deed of trust lien on certain real property and the improvements thereon commonly known as 8533 Georgetown Pike, McLean, Virginia 22102 (the "**Real Property**") pursuant to a Credit Line Deed of Trust and

Security Agreement, dated February 26, 2018, executed by the Debtor for the benefit of the Bank and recorded with the Circuit Court of Fairfax County, Virginia (the "**State Court**") on March 1, 2018 at Deed Book 25430, Page 0556 (the "**Deed of Trust**"). The Deed of Trust is attached hereto and incorporated herein as **Exhibit 2**.

5.     The Real Property is a luxury detached single-family home in a desirable neighborhood in Northern Virginia that is zoned RE (Res Estate 1DU/2AC) and contains nearly 11,000+/- square feet of living space with 6 or more bedrooms, 6 full and 3 half baths, including a main level bedroom and full bathroom, a second floor master suite with a fireplace, sitting room, balcony, wet bar, his and her closets, dual vanities, steam shower, and a free standing tub, and a 3 car garage with pre-wiring for electronic vehicle charging. The Real Property also contains an elevator to all 3 levels, a chef's kitchen, La Cornue range, super-sized island with Calacatta countertops, a second caterer's kitchen, an exercise room equipped with an infrared sauna and a fully finished walk-up lower level that includes a wet bar, recreation rooms and a guest suite.

6.     The Borrowers and the other obligors under the Loan (collectively, the "**Obligors**") initially defaulted on the Loan approximately two (2) years by, *inter alia*, failing to procure a bank-approved contract of sale for the Real Property by August 26, 2019. In order to allow the Debtor additional time to sell the Real Property and satisfy the Loan, by way of the Change in Terms Agreements dated August 13, 2019, December 19, 2019 and June 26, 2020, the maturity date of the Loan was extended to November 26, 2019, March 31, 2020 and September 2, 2020, respectively.

7.     Despite the numerous extensions of the maturity date under the Change in Terms Agreements, the Obligors defaulted on the terms of the Loan by, *inter alia*, failing to satisfy the Loan on the final maturity date (i.e. September 2, 2020). Subsequently, as a final accommodation to

the Obligors, the Bank agreed to temporarily forbear from exercising its rights under the Loan subject to the terms of a Forbearance Agreement, dated December 29, 2020, between Obligors and the Bank (the "**Forbearance Agreement**") to conditionally allow the Borrowers up to an additional six (6) months (i.e. up to June 30, 2021)[1] to sell the Real Property or refinance and satisfy the Loan in full.[2]  Shortly after entering into the Forbearance Agreement, the Obligors defaulted under the terms thereof by failing to make timely payments and meet other certain milestones under the Forbearance Agreement.  The Forbearance Agreement is attached hereto and incorporated herein as **Exhibit 3**.  The Note, the Deed of Trust and the Forbearance Agreement, together with all other documents evidencing, securing, guaranteeing or otherwise relating to the Loan, are hereinafter collectively referred to as, the "**Loan Documents**".

8.    As a result of the defaults, the Bank exercised its rights and remedies in accordance with the Loan Documents and applicable law including, by scheduling the foreclosure sale on the Real Property for June 2, 2021 (the "**Foreclosure Sale**").[3]

9.    On June 1, 2021 (the day prior to the Foreclosure Sale), the Borrowers filed a Motion for Temporary Injunction with the State Court seeking to enjoin the Bank from foreclosing on the Real Property.   On that same date, after an evidentiary hearing on the Motion for Temporary Injunction, the relief requested by the Borrowers seeking to enjoin the Bank from conducting the Foreclosure Sale was denied by way of an Order from the State Court.  The Order is attached hereto and incorporated herein as **Exhibit 4**. Immediately thereafter, on the evening of June 1, 2021 (the

---

[1] Regardless of whether there was a default under the Forbearance Agreement, the Obligors have failed to satisfy the Loan.

[2] Pursuant to Section 10(a) of the Forbearance Agreement, the Debtor agreed to use best faith efforts to market and sell the Real Property under commercially reasonable terms taking into account the matured status of the Loan and based upon current market conditions in and around McLean, Virginia for residential properties similarly situated to the Real Property.

4

"**Petition Date**"), just hours before the Foreclosure Sale, the Debtor filed a bare bones voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Voluntary Petition**") to frustrate and delay the Foreclosure Sale.

10.     According to the Voluntary Petition, the Debtor's business is Single Asset Real Estate ("**SARE**") (as defined in 11 U.S.C. § 101(51B)) *and* the Debtor's filing was a small business debtor as defined by 11 U.S.C. § 101(51D).[4]  The Debtor did not elect to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code and is operating as a debtor-in-possession under § 1107.

11.     The Debtor appears to simply be the passive title owner of a single family home. Other than purportedly attempting to sell the Real Property, the Debtor conducts no business activity. Indeed, the Debtor's Schedules [Dkt. No. 17, June 23, 2021] list no property other than the Real Property and two questionable potential causes of action that are not actively being pursued.[5]

12.     According to the Debtor's Schedules, the Bank is the Debtor's only secured creditor. As set forth in the Proof of Claim filed by the Bank [Claim No. 1-1, June 17, 2021], as of the Petition Date, the amount of the Bank's claim was $1,660,536.53 plus continuing interest, fees, expenses and charges.

13.     Similarly, the Debtor has scheduled only a few general unsecured creditors which are not listed as disputed.[6]  Given that the Debtor only passively owns the Real Property and conducts

---

[3] The Debtor was provided with formal notice of the Foreclosure Sale on or about May 13, 2021.

[4] The Bank questions whether the Debtor as a matter of law can be *both* a small business debtor and a SARE.  In fact, it appears that the Debtor is actually neither. The Debtor's primary activity is owing the Real Property which is a single family residential property and thus excluded from SARE (*see infra*).  Additionally, the Debtor does not appear to be engaged in any commercial or business activity and thus may not be a small business debtor.  As such, the Bank reserves all rights to challenge the Debtor's misleading designations.

[5] According to the testimony of the Debtor's principal, manager and 100% owner (Raymond Rahbar, Jr.), at the Meeting of Creditors, (i) the Debtor asserted a claim for, *inter alia*, improper acceleration in connection with the execution of the Forbearance Agreement in response to a confessed judgment filed by the Bank in State Court and (ii) the Debtor is not actively pursuing a lawsuit it filed in the State Court against adjacent land owner to the Real Property.

[6] The Debtor listed 8 creditors with undisputed claims totaling approximately $364,000.  The Debtor also listed 3

no business, the Bank questions the validity of certain of these debts including: (1) a purported PPP Loan from a fintech company (Cross River Bank) that the Debtor's principal has seemingly been unable to verify, (2) tax related services from an accounting firm (Kazemi Accounting) for a Debtor that does not file tax returns, (3) services rendered by an affiliated entity (American Majestic Construction, LLC) that is owned and/or controlled by the Debtor's principal and (4) legal services by a couple of law firms (Perry Charnoff LLC and Mahdavi, Doumer, Budd & Levine, PLLC) that represent Obligors other than the Debtor. As such, this bankruptcy case appears to simply be a two-party dispute between the Debtor and Bank and should not be allowed to linger, given the Loan initially matured over two years ago and the forbearance previously provided to the Debtor.

14.     As of today, the Debtor has taken minimal action to move this case forward, other than filing an application to employ a real estate brokerage firm that has purportedly been unable to locate purchaser for the Real Property despite having marketed the Real Property for sale for approximately a year.[7]  However, the Debtor has already had more than ample time to sell the Real Property, especially considering that it is one of the best seller markets for this region in recent history.

## Basis for Relief and Relief Requested

15.     The Bank seeks relief from the automatic stay to permit the Bank to exercise its rights and remedies under the Loan Documents and applicable non-bankruptcy law with respect to the Real Property, including, without limitation, foreclosing against the Real Property.

16.     Section 362(d) of the United States Bankruptcy Code in relevant part provides:

---

disputed claims totaling approximately $91,000.

[7] The Debtor's principal testified that despite the Real Property being on the market for approximately a year, the real estate brokerage firm has not communicated a single offer to him.

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay ---

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> …
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later--
>> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>> (B) the debtor has commenced monthly payments that--
>>> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>>> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate;

11 U.S.C. §362(d).

17.     The automatic stay should be terminated for cause pursuant to Section 362(d)(1).[8]

The Debtor has not made any payment to the Bank since May 5, 2021, and interest and fees continue to accrue. The Loan fully matured according to the terms of the Loan Documents almost one year ago (i.e. on September 2, 2020), and the Bank has previously granted substantial forbearance to the Debtor. The Debtor is not conducting any business and the Real Property generates no revenue to pay the Bank or to finance the administration of this case.[9] There is no probability of effective

---

[8] The Bank reserves the right to move under Section 362(d)(2).

[9] The Debtor's principal testified at the 341 Meeting of Creditors that a debtor-in-possession bank account had not been opened because the Debtor had no income or money on hand.

reorganization within a reasonable time since the Debtor intends to liquidate in any event (i.e. sell

the Real Property, its only real asset), and it has even been unsuccessful (purposely or otherwise) in

its sale efforts to date.  The Debtor has only taken the minimal action necessary to prevent this case

from being dismissed.[10]  Because the Debtor has had ample opportunity to satisfy or work out the

Loan in good faith, the only logical inference to be drawn is that the Debtor and its principal are

using this bankruptcy case as a further mechanism to remain in the Real Property or use it as long as

possible without paying for it.[11]  Under these circumstances, the Bank cannot be adequately

protected except by bringing this case to a prompt resolution.

18.    Moreover, additional cause exists under Section 362(d)(1) to grant relief from the

stay because in the Forbearance Agreement the Debtor agreed that in the event it filed a petition

under the Bankruptcy Code, it would not contest or oppose a motion that sought relief from the

automatic stay as to the Real Property.  *See* Forbearance Agreement at ¶ 23.[12]

---

[10] To date, the Debtor has not, *inter alia*, filed a monthly operating report despite having filed a Voluntary Petition on June 2, 2021.

[11] According to the Debtor's Schedules and the testimony of the Debtor's principal at the Meeting of Creditors, BF Management (a company owned and/or controlled by the Debtor's principal) had a license or lease agreement with the Debtor and a few of its employees were operating the business out of the Real Property.  Additionally, according to a certain pleading filed in the State Court, the Debtor's principal alleged he was living at the Real Property from time to time.  More to the point, according to reputable websites, homes in the McLean area currently sell on average between 23 and 30 days on the market.  See https://www.redfin.com/city/24355/VA/McLean/housing-market (last visited August 6, 2021); https://marketminute.longandfoster.com/market-minute/va/mclean.htm (August 6, 2021).

[12] Section 23 of the Forbearance Agreement states as follows:

In the event that a bankruptcy case is hereafter filed by or against either of the Borrowers, the Obligors specifically agree that the automatic stay provisions of Section 362 of the United States Bankruptcy Code applicable to any such bankruptcy case shall be immediately terminated as to the Lender and all of that Collateral which constitutes property of the bankruptcy estate created thereby, so that the Lender may immediately assert all of its rights and remedies under this Agreement, the Loan Documents and applicable law with respect to the [Real Property]. The Obligors further agree not to contest any motion to terminate or modify the automatic stay filed by the Lender in any such bankruptcy case and to immediately execute and deliver to the Lender and to file with the bankruptcy court such documents, pleadings and papers as are necessary for the Lender to obtain such an immediate termination of the automatic stay.

19.     Under the facts and circumstances of this case, the Court should find the automatic stay waiver is enforceable: (1) the Debtor is a sophisticated financial party to a commercial loan; (2) the Debtor, which was represented by counsel that negotiated the terms of the Forbearance Agreement, knew and understood the effect of the stay waiver when it entered into the Forbearance Agreement;[13] (3) the Debtor received substantial consideration for the stay waiver, to wit an additional extended period of time after the Loan had fully matured to sell the Real Property or refinance the Loan; (4) the stay waiver was a material term for the Bank to agree to forbearance and the Bank would be prejudiced if the waiver was not enforced; (5) this bankruptcy case is a two-party dispute, and enforcement of the stay waiver will not affect other parties in interest; and (6) there has been no change in circumstances that warrants revisiting the waiver, as the Debtor has not proposed a plan or filed a motion to sell the Real Property. *See, e.g., In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship*, 227 B.R. 422, 425 (Bankr. D. Md. 1998) (setting forth factors and enforcing stay waiver).

20.     Section 362(d)(3) is inapplicable to this case because the Real Property is not "single asset real estate" as defined in Section 101(51B).   The definition of single asset real estate specifically excludes "residential real property with fewer than 4 residential units."   There is no dispute that the Real Property is a residential, single family home.   Even if Section 362(d)(3) did apply, the Debtor has not demonstrated (as discussed above) that it will be able to file a confirmable plan by the September 1, 2021 deadline and the Debtor has no ability to make any payments to the Bank.   Thus, the Bank would be entitled to relief under this section as well, if it applied.

---

[13] Section 11(j) of the Forbearance Agreement states as follows:

**The Obligors acknowledge that they have read this Agreement, understand its contents, and have sought the advice of counsel before executing and delivering this Agreement.**

9

21.    The Bank requests that any Order granting this motion will be effective immediately

upon entry and, notwithstanding Rule 4001(a)(3), enforcement of such Order will not be stayed until

the expiration of fourteen (14) days after entry of the Order.

WHEREFORE, FVCbank respectfully requests the following relief:

A.    That this Motion be granted;

B.    That the automatic stay of 11 U.S.C. § 362 be terminated as to the FVCbank so as

to permit FVCbank to enforce its rights under the Loan Documents and applicable non-

bankruptcy law, including, but not limited to, foreclosing on the Real Property; and

C.    That FVCbank be granted such other and further relief as is just and equitable.

Dated: August 9, 2021                    Respectfully submitted,
       Alexandria, VA

                                         By:    /s/_____
                                                Scott W. Foley, Esq., Bar No. 43484
                                                Shapiro Sher Guinot & Sandler
                                                250 West Pratt Street
                                                Suite 2000
                                                Baltimore, MD 21201
                                                Tel: (410) 385-4234
                                                swf@shapirosher.com
                                                *Counsel for FVCbank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of August, 2021, a copy of the foregoing was

served on the parties listed below by first-class mail, unless said party is a registered ECF participant

and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party.

Raymond Rahbar, Jr.
10110 Nedra Dr.
Great Falls, VA 2206
*Debtor Designee for 8533 Georgetown Pike LLC*

John P. Forest, II
11350 Random Hill Rd.
Suite 700
Fairfax, VA 22030
*Debtor's counsel*

Jack Frankel
Office of the U.S. Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314

## 20 Largest Unsecured Creditors (served via first class mail)

Jim's Carpet
6108 Overlea Rd.
Bethesda, MD 20816

BYND Holding, LLC
650 F Street, N.W., Suite 150
Washington, DC 20004

American Majestic Construction, LLC
10110 Nedra Dr.
Great Falls, VA 22066

Cross River Bank
525 Washington Blvd., Suite 2200
Jersey City, NJ 07310

11

Falcon Lab
1765 Greensboro Station Pl., Suite 130
Tysons, VA 22102

That's what you get, LLC
2228 Jacob Way
Gambrills, MD 21054

Mahdavi, Doumar, Budd & Levine, PLLC
1530 Wilson Blvd., Suite 170
Arlington, VA 22209

Perry Charnoff PLLC
1010 N. Glebe Rd., Suite 310
Arlington, VA 22201

Kazemi Accounting
8229 Boone Blvd., Suite 844
Vienna, VA 22182

Romulus and Remus, LLC
1709 S. 14th St.
Arlington, VA 22204

Internal Revenue Service
Centralized Insolvency Ops.
Box 7346
Philadelphia, PA 19101-7346

/s/ Scott W. Foley
Scott W. Foley (VSB No. 43484)